This is an action by a holder of a homeowner's insurance policy to recover for damages to a dwelling and contents at Lot 4, Tierra Court, on Dauphin Island. The house and its contents were destroyed in Hurricane Frederic, which struck the coast of Alabama on September 12, 1979. Houston and Marie Feaster, the homeowners, claim that the house and its contents, located on Dauphin Island, are covered by an insurance policy issued by American Liberty Insurance Company. American Liberty denies coverage for damages to the structure and its contents. The company claims that coverage is limited to personal liability.
The declaration page reads as follows:
 Feaster Houston H. Marie B. 63 Silverwood Mobile AL 36607
 The residence premises covered by this policy is located at the above address, unless otherwise stated . . .
Section II — Other insured locations
Lot 4 Tierra Court Dauphin Island Mobile AL
The policy included a twelve page description of the insurance agreement. The agreement defines "insurance location" as "the residence premises," as well as various *Page 401 
other places an insured might reside. Section I of the agreement sets the various types of coverages contemplated by the agreement, such as damages to the dwelling, other structures and personal property, wherever it is located. Section I also set out exclusions and conditions to coverage. Section II sets out liability coverages, exclusions and additional coverages.
At the trial before the trial court sitting without a jury, the insurance company contended that the Feasters' house on Dauphin Island is not their "residence premises" because the policy anticipates that a family can have only one "residence premises." The company claimed that only a "residence premises" receives coverage for damages to the structure and the personal property within. "Insured locations," American Liberty asserted, receives liability coverage. The company asserted that the agreement unambiguously failed to provide coverage for the Feasters' house on Dauphin Island. The company introduced evidence that the Feasters had an insurance policy with another company covering their residence at Dauphin Island.
The Feasters noted that the declaration page of the policy clearly listed their house at Dauphin Island under "other insured locations." The insurance agreement does not specify any distinction between "insured location" and "residence premises." The Feasters claimed that the policy clearly anticipated coverage of their beach house. The Feasters also argued that at worst, the policy is ambiguous and should be construed in a manner most favorable to the insured.
At the close of the evidence the trial judge granted American Liberty's motion for a directed verdict. ARCP 50. The trial court denied the Feasters' motion for a new trial. ARCP 59. The Feasters appeal from the verdict rendered in favor of the insurance company.
Two issues are raised by this appeal: (1) What standard of review is applicable to the trial court's order? (2) Whether the trial court erred in granting a directed verdict in favor of the insurance company.
As a procedural matter, the granting of a directed verdict under Rule 50 (a) is improper when the case is tried before a judge without a jury. The method of raising the sufficiency of the evidence in a nonjury trial is a Rule 41 (b) motion for involuntary dismissal. See Ala.R.Civ.P. 41 (b), Committee Comments. Rule 41 (b) provides:
 After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.
Although directed verdicts and involuntary dismissals have comparable characteristics, to say that they are equivalent in all respects is to ignore the different functions of the judge in a jury trial, in which he or she is not the trier of fact, and the function of a judge in a nonjury trial, in which he or she is the trier of fact. United States v. United States GypsumCo., 67 F. Supp. 397 (D.D.C. 1946). Nevertheless, after an examination of the standards for a directed verdict and an involuntary dismissal, it will be clear that by satisfying the standard for a directed verdict, the standard for granting an involuntary dismissal is implicitly satisfied. Thus, the court did not commit prejudicial error by granting a directed verdict rather than an involuntary dismissal. See Lentino v. FringeEmployment Plans, Inc., 611 F.2d 474 (3d Cir. 1979).
In Casey v. Jones, 410 So.2d 5 (Ala. 1981), this court elucidated the standard for granting a directed verdict. On a motion for a directed verdict in a jury trial, the judge, without weighing the credibility of the evidence, may grant the motion only if there is one reasonable conclusion from the evidence and the law — and that conclusion is that the nonmoving party does not present a *Page 402 
prima facie case. Id., Ala.R.Civ.P. 41 (b), Committee Comments. The directed verdict may not be granted if there is a scintilla of evidence which would support a verdict in favor of the nonmoving party. Id. This rule prevents the impairment of the right to trial by jury.
In contrast, in a nonjury trial, the court, in considering a Rule 41 (b) motion for an involuntary dismissal, "as ultimate trier of fact, is free to weigh the evidence and the credibility of the witnesses." Ala.R.Civ.P. 41 (b), Committee Comments (citing O'Brien v. Westinghouse Electric Corp.,293 F.2d 1 (3d Cir. 1961). Under prior practice, an involuntary dismissal was the equivalent of a nonsuit. The standard for a nonsuit was the same as the current standard for a directed verdict and was applicable to jury and nonjury cases. See 5 Moore's Federal Practice ¶ 41.13[3] (2d ed. 1976). The Federal Rules amended this procedure, making Rule 41 (b) applicable only to nonjury trials. It is the amended version of Federal Rule 41 (b), that was adopted in Alabama.
We hold that since the Judge is the trier of fact in a nonjury action, he or she may weigh and consider the evidence on a motion for an involuntary dismissal. The normal presumptions of correctness attach to a trial court's ruling on an involuntary dismissal. The trial court's ruling need only be supported by credible evidence and will not be set aside unless it is clearly erroneous or palpably wrong or unjust. Id.
The trial court below granted the directed verdict on the grounds that under the terms of the insurance policy, the only coverage extended to the Feasters' beach house was personal liability coverage, not property coverage. The judgment of the trial court is supported by credible evidence. The policy is clearly divided into Sections I and II. Section I provides property coverage and Section II provides personal liability coverage. The declaration page listed the Dauphin Island property under Section II. At the bottom of the declaration page were several blocks for rating the residence premises, but only one block for each type of rating — indicating that only one dwelling was rated. Furthermore, the language of the policy reads "the residence premises is the only premises where the Named Insured or spouse maintains a residence." The policy, taken as a whole, supports the finding of the trial court.
The directed verdict should be properly labelled an involuntary dismissal. The involuntary dismissal of the trial court is affirmed.
AFFIRMED.
ALMON, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., concurs in the result.